UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSETON GENERATING LLC,

                      Plaintiff,

-against-

LOCAL 320 OF THE INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS,

                      Defendant.

**OPINION & ORDER**

23-CV-02198 (PMH)

PHILIP M. HALPERN, United States District Judge:

Roseton Generating LLC ("Plaintiff" or "Roseton") filed a petition, pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), *as amended*, 29 U.S.C. § 185, on March 15, 2023 seeking to vacate Arbitrator Erica Tener's ("Arbitrator Tener") March 6, 2023 Award which sustained a grievance filed by Local 320 of the International Brotherhood of Electrical Workers ("Defendant" or "Local 320"). (Doc. 1, "Pet."). Defendant responded to the petition on April 18, 2023. (Doc. 16). Plaintiff filed a "Response to Defendant's Further Affirmative Allegations Opposing Vacation of the Award" on April 25, 2023. (Doc. 18).

On August 4, 2023, Plaintiff, with permission of the Court, moved to vacate the award in the form of a motion for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 27; Doc. 28; Doc. 29, "Pl. Br."; Doc. 30; Doc. 32). Defendant served its opposition on August 25, 2023 (Doc. 33; Doc. 24; Doc. 35; Doc. 36, "Def. Br."; Doc. 37), and Plaintiff's motion for summary judgment was fully briefed with the filing of its reply memorandum of law on September 15, 2023. (Doc. 31, "Reply").

For the reasons set forth below, the motion to vacate is DENIED and the motion to confirm

is GRANTED.[1]

**BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the motion and draws them from the pleadings, the parties' Rule 56.1 Statement,[2] Arbitrator Tener's March 6, 2023 Opinion (Pet. Ex. A, "Tener Op."), and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Local 320 is a labor organization representing production and maintenance employees at the Roseton Power Plant, an electric generating station located at 992 River Road, Newburgh, New York (the "Roseton Plant"). (56.1 ¶¶ 2-4; Pet. ¶ 5). Roseton currently owns and operates the Roseton Plant. (Pet. ¶ 4; Tener Op. at 1).

I.      Prior Employers and Agreements

In 2012, the Roseton Plant was operated by Dynegy Northeast Generation, Inc. ("Dynegy"). (56.1 ¶ 7). Local 320 and Dynegy were parties to a collective bargaining agreement covering the Roseton Plant, effective February 1, 2008 through January 31, 2012 (the "2008 CBA"). (*Id.*). On April 1, 2013, Dynegy and Local 320 signed a Memorandum of Agreement ("4/1/2013 MOA") which extended the 2008 CBA for another eight months. (*Id.* ¶ 9). The 4/1/2013 MOA also reflected changes to retirement benefits for bargaining unit employees—namely,

---

[1] Defendant concludes its opposition brief with a request that the Court confirm the award and direct Plaintiff's compliance therewith. (Def. Br. at 13). As discussed *infra*, the Court construes Defendant's request as a motion to confirm the arbitration award.

[2] The parties submitted multiple versions of the Rule 56.1 Statement: (1) Plaintiff's statement of undisputed material facts (Doc. 28); (2) Defendant's response to Plaintiff's statement of undisputed material facts and its counter-statement of facts (Doc. 34); and (3) Plaintiff's rebuttal statement of undisputed material facts and response to Defendant's counterstatement. (Doc. 32). The Court herein refers to Plaintiff's rebuttal statement of undisputed material facts (Doc. 32), which is the most comprehensive document that includes each parties' statement of facts and the responses thereto. The Court notes, however, that Plaintiff sets forth its sixty-three paragraph statement of facts and then Defendant began its counter-statement of facts beginning again at number one. For the sake of clarity, the Court hereafter refers to the first section of the document as "56.1" (Doc. 32 at 1-27) and the second section as "CntrStmt." (*id.* at 28-37).

changes to the eligibility requirements for receipt of a Social Security supplement. (*Id*. ¶¶ 11, 14). Per these modifications, eligible employees included those "at least age 55 with 10 years of service at the time of contract ratification" who retire "on or after age 59 and prior to their Social Security Retirement Age." (*Id*. ¶ 14). The parties dispute whether these modifications applied to all bargaining unit employees which were part of the "Dynegy Northeast Generation, Inc. Retirement Income Plan" (the "DNE Plan") or to bargaining unit employees which were in the employ of Dynergy. (*Id*. ¶¶ 11, 14).

In May 2013, Castleton Commodities Management Services LLC ("Castleton") purchased the Roseton Plant from Dynergy. (*Id*. ¶¶ 10, 15; Tener Op. 2). Castleton adopted the 2008 CBA as modified by an April 11, 2013 Memorandum of Agreement between Castleton and Local 320 ("4/11/2013 MOA"). (56.1 ¶ 16). The parties dispute whether Castleton, by virtue of the 4/11/2013 MOA, also adopted the 4/1/2013 MOA. (*Id*. ¶¶ 10, 16). Thereafter, Local 320 and Castleton entered into a collective bargaining agreement for the period May 1, 2013 to May 31, 2025 ("2013-2015 CBA"). (*Id*. ¶ 6; Pet. Ex. E). Local 320 and Castleton subsequently entered into a successor agreement for the period June 1, 2015 to May 31, 2020 ("2015-2020 CBA"). (56.1 ¶ 5; Pet. Ex. D).

On October 20, 2016, Castleton gave notice to Local 320 that it was assigning the 2015-2020 CBA to its affiliate, Roseton. (56.1 ¶ 17; Pet. Ex. J; Tener Op. at 2). Roseton and Local 320 entered into a Memorandum of Agreement ("10/1/2020 MOA"), effective October 1, 2020 through May 31, 2025, that set forth specified changes to the 2015-2020 CBA. (56.1 ¶ 5). Thereafter, Roseton and Local 320 entered into the current collective bargaining agreement, effective October 1, 2020 through May 31, 2025 ("2020-2025 CBA"). (*Id*. ¶ 4). Article XI. B of the 2020-2025 CBA provides in pertinent part:

3

> "The 'Supplemental Agreements' which are attached as appendices to the Agreement are by reference considered to be part of this Agreement . . . Any other separate written agreements between the parties to this Agreement . . ., which by their terms are currently applicable to this Agreement, are also considered to be part of the Supplemental Agreements and are by reference considered to be part of this Agreement . . . Any such Supplemental Agreement that is physically attached to the Agreement shall be done so only for administrative convenience and shall not be deemed to have any greater significance than those Supplemental Agreements which by their terms are still applicable but have not been physically attached to the Agreement."

(*Id*. ¶ 57).

II.   Tillem Arbitration

In 2019 and 2020, Local 320 filed grievances against Castleton and Roseton on behalf of four former Roseton Plant employees Peter Melnik, James LeBlanc, Kevin Tighe, and Warren Ward, who were seeking payment of the Social Security supplement and retiree medical coverage. (*Id*. ¶¶ 18, 23; CntrStmt. ¶ 12; Tener Op. at 2-3). Roseton denied the grievances. (56.1 ¶¶ 22-23; CntrStmt. ¶¶13-14). A hearing was held before Arbitrator Jack Tillem ("Arbitrator Tillem") on April 1, 2021, to address these grievances. (56.1 ¶ 24; CntrStmt. ¶ 16). Arbitrator Tillem ultimately sustained the grievances related to the Social Security supplement but found that the employer had no obligation to provide post-retiree medical benefits. (56.1 ¶ 25). Arbitrator Tillem in connection with the Social Security supplement directed the parties to confer on a remedy and retained jurisdiction in the event the parties could not agree on a remedy. (*Id*. ¶ 27). The matter was resolved pursuant to a Stipulation of Settlement Remedy signed by Arbitrator Tillem in February 2022. (*Id*. ¶¶ 27, 30). On November 23, 2022, the award by Arbitrator Tillem (the "Tillem Award") was

confirmed by the United States District Court for the Southern District of New York.[3] (*Id.* ¶ 28; CntrStmt. ¶ 17).

    III.    <u>The Putnam Grievance and Tener Arbitration</u>

In March 2021,[4] after contract negotiations for the 2020-2025 CBA but before the new 2020-2025 CBA was published, Local 320's President and in-house counsel for Roseton discussed potential revisions to the Article X Grievance and Arbitration Procedure ("Grievance Procedure") to align it with certain corporate restructurings and title changes that had occurred since the 2015-2020 CBA was published. (56.1 ¶ 31). The second draft of the Grievance Procedure provided Local 320 with ten days to appeal in writing after Roseton's denial of a grievance at step two. (*Id.* ¶ 34).

In September 2021, prior to resolution of the Tillem Arbitration, Local 320 filed a grievance seeking payment of the Social Security supplement on behalf of former Roseton employee Michael Putnam and all other employees who would qualify for that benefit in the future (the "Putnam Grievance"). (*Id.* ¶ 29). On September 29, 2021, the Putnam Grievance was denied at the first step of the Grievance Procedure. (*Id.* ¶¶ 31, 38; Tener Op. at 4). Local 320 filed an appeal that same day, and Roseton denied the Putnam Grievance at the second step on October 13, 2021. (56.1 ¶¶ 39-40). On November 3, 2021, more than ten days after the step two denial, the parties communicated via email regarding the need to proceed to step three of the Grievance Procedure. (*Id.* ¶¶ 41-44). The parties now dispute whether the amended Grievance Procedure

---

[3] A copy of the Opinion and Order confirming Arbitrator Tillem's award is publicly available at *IBEW Loc. Union 320, AFL-CIO v. Roseton Generating LLC*, No. 22-CV-03457, 2022 WL 17175800, at *1 (S.D.N.Y. Nov. 23, 2022).

[4] The Rule 56.1 Statement indicates March 2022, but Arbitrator Tener's decision and the evidence underlying the Rule 56.1 Statement show that this is an error—discussions regarding amending the Grievance Procedure language occurred in March 2021. (56.1 ¶¶ 31, 32; Pet. Ex. M; Tener Op. at 5).

5

language applied at the time to procedurally bar the Putnam Grievance. (*Id*. ¶¶ 34, 41-46; CntrStmt. ¶¶ 9-11; Tener Op. at 6).

A hearing was held before Arbitrator Erica Tener ("Arbitrator Tener") on November 1, 2022. (56.1 ¶ 47). The parties each submitted post-hearing briefs. (*Id*. ¶ 48; Pet. Exs. Q-R). Arbitrator Tener concluded, *inter alia*, that: (i) the Putnam Grievance was arbitrable; (ii) Mr. Putnam was entitled to be paid the Social Security supplement benefit; and (ii) the issue of remedy can best be determined by the parties with input from an actuary (*Id*. ¶¶ 49, 61; Tener Op.).

This litigation followed.

## **STANDARD OF REVIEW**

"A federal district court has subject matter jurisdiction under Section 301 of the LMRA to confirm or vacate an arbitration award." *See Riverbay Corp. v. Serv. Emps. Int'l Union, Loc. 32BJ*, No. 22-CV-10994, 2023 WL 3738984, at *4 (S.D.N.Y. May 31, 2023) (citing *Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998)). District Courts generally treat a "petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).

Though a summary judgment standard is applied to a petition to vacate, the Second Circuit has repeatedly recognized that the Court owes "strong deference . . . [to] arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *New York City Dist. Council of Carpenters v. WJL Equities Corp.*, No. 15-CV-04560, 2015 WL 7571835, at *2 (S.D.N.Y. Nov. 24, 2015). The Court's review of an arbitration award is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015). "The federal policy in favor of

6

enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes." *New York Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997). "Because the LMRA embodies a clear preference for the private resolution of labor disputes . . . judicial review of arbitral awards in this context is among the most deferential in the law." *IBEW Loc. Union 320, AFL-CIO v. Roseton Generating LLC*, No. 22-CV-03457, 2022 WL 17175800, at *3 (S.D.N.Y. Nov. 23, 2022) (internal citations and quotations omitted).

"Confirmation of an arbitration award is thus generally 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]'" *Id*. (citing *D.H. Blair & Co.*, 462 F.3d at 110). "The Court's task is not to reconsider the merits of the dispute . . . [but rather] is simply to ensure that the arbitrator was even arguably construing or applying the contract and acting within the scope of [her] authority and did not ignore the plain language of the contract." *Id*. (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016)). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110.

"Given this deference and limited review, an arbitral award will normally be vacated 'only upon finding a violation of one of the four statutory bases [enumerated in the FAA[5]], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law.'" *IBEW Loc. Union 320, AFL-CIO*, 2022 WL 17175800, at *3 (quoting *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007)).

## **ANALYSIS**

The basis for Plaintiff's petition to vacate the award is that Arbitrator Tener exceeded the scope of her authority in finding that: (i) the grievance is arbitrable; (ii) the 4/1/2013 MOA is inapplicable to the 2020-2025 CBA; and (iii) the remedy calculation requires input from an actuary. (Pl. Br. at 16-21).

First, Plaintiff argues that Arbitrator Tener exceeded her authority in finding that the Putnam Grievance was timely advanced from step two to step three of the Grievance Procedure, and thus arbitrable. (Pl. Br. at 18; Reply at 7). Plaintiff specifically argues that Arbitrator Tener ignored the Grievance Procedure's limitations periods and "essentially added language to the CBA that excuses the Union from complying with the limitations period or even participating in Step 3

---

[5] The four statutory grounds for vacatur encompass those situations in which:

(i)   the award was procured by corruption, fraud, or undue means;

(ii)  there was evident partiality or corruption in the arbitrators, or either of them;

(iii) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(iv)  the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

of the Grievance Procedure. . . ." (Pl. Br. at 23). Defendant responds that the determination of whether the grievance is time-barred is a procedural issue for an arbitrator, not this Court, to determine. (Def. Br. at 7). The procedural question of whether Local 320 timely advanced the Putnam Grievance from step two to step three under the Grievance Procedure is an issue for Arbitrator Tenner to decide. *See i.e.*, *Citi Connect, LLC v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 20-CV-05147, 2020 WL 5940143, at *4 (S.D.N.Y. Oct. 7, 2020) ("Whether an original demand to arbitrate was time-barred under a specific provision in the parties' agreement is a question within the exclusive province of the arbitrator. . . This is an issue of procedural arbitrability that is for the arbitrators to decide."); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *Chelsea Grand, LLC v. New York Hotel & Motel Trades Council*, 729 F. App'x 33, 37 (2d Cir. 2018).

Moreover, Arbitrator Tener did not ignore the Grievance Procedure. (Reply at 7). She expressly analyzed the parties' arguments and evidence regarding the applicable Grievance Procedure language and determined, for a multitude of sound reasons,[6] that the Putnam Grievance is arbitrable. (Tener Op. at 5-7). Arbitrator Tener did not add language to the 2020-2025 CBA nor render any language in the 2020-2025 CBA meaningless. (Reply at 7-8). She simply applied the pertinent contractual language to the facts presented. Accordingly, Arbitrator Tener did not exceed the scope of her authority in finding that the Putnam Grievance is arbitrable.

Second, Plaintiff argues that Arbitrator Tener's finding that the parties did not intend for the 4/1/2013 MOA to remain in effect did not draw its essence from the 2020-2025 CBA. (Pl. Br.

---

[6] Arbitrator Tener found the grievance arbitrable because: (i) the parties never met in person to formalize the agreed upon amended Grievance Procedure language; (ii) the parties never included any language about consequences for missing established deadlines; (iii) the parties understood that the Putnam Grievance was bound to end up in arbitration; and (iv) further processing at step three of the Grievance Procedure would not have resulted in a different outcome. (Tener Op. at 7).

9

at 24). Plaintiff specifically takes issue with Arbitrator Tener's reliance on the fact that the 4/1/2013 MOA was not physically attached to the 2020-2025 CBA, given Plaintiff's argument that the 4/1/2013 MOA constituted a Supplemental Agreement which was "between the parties" and "currently applicable" to the agreement, and therefore did not have to be physically attached to remain applicable under Article XI.B. (*Id*. at 24-25; 56.1 ¶ 57). Defendant disputes, with respect to Article XI.B, that Plaintiff was a "party" to the 4/1/2013 MOA and that the 4/1/2013 MOA was "currently applicable" to the 2015-2020 or 2020-20205 CBA. (Def. Br. at 11-12).

As a threshold matter, Arbitrator Tenner was presented with these same arguments as to whether the 4/1/2013 MOA was "between the parties" and "currently applicable" in the context of Article XI.B, such that the agreement would not need to be physically attached to apply to the collective bargaining agreements. (Pet. Ex. R at 25-26; Pet. Ex. Q at 20-21). Arbitrator Tenner did not, nor did she need to, specifically address these arguments in her decision. *See Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 28 (2d Cir. 2017) ("The arbitrator 'need not delve into every argument made by the parties' in order to issue a reasoned award."). However, she did cite to a portion of Article XI.B—"The 'Supplemental Agreements' which are attached as appendices to the Agreement are by reference **considered to be part of the Agreement** . . . "—in concluding that "unlike all of the other supplemental agreements and digests, . . . the [4/1/2013 MOA] is conspicuously absent. Therefore, one must conclude the parties did not intend the requirement to remain in effect." (Tener Op. at 8-9 (emphasis in original)). Thus, Arbitrator Tener did not *ignore* Article XI.B. (Reply at 10). It is reasonable to infer that she was not persuaded by Plaintiff's argument for application of the remainder Article XI.B language regarding written agreements "between the parties" and "currently applicable" to the agreement, given that she omitted such

10

language from her analysis and applied what she deemed to be the pertinent portion of Article XI.B.

Moreover, Arbitrator Tener's rejection of Plaintiff's argument was reasonable. To establish that the agreement was "between the parties," Plaintiff advances an assignment theory that hinges on Castleton's adoption of the 4/1/2013 MOA. (Reply at 11). Specifically, Plaintiff argues that Castleton, in adopting the 2008 CBA between Dynegy and Local 320, also adopted the 4/1/2013 MOA (which was between Dynegy and Local 320) and thus became a party to the 4/1/2013 MOA. (*Id*.). Castleton then assigned those agreements to Roseton. (*Id*.). The only evidence Plaintiff offered to Arbitrator Tener (and to the Court on this motion) to support Castleton's adoption of the 4/1/2013 MOA is language in the preamble to the 4/11/2013 MOA. (Pet. Ex. R at 6, n. 2; Reply at 11; 56.1 ¶ 58). In light of this limited and unpersuasive offer of proof, and considering the deference that is owed to arbitrators, it was not unreasonable for Arbitrator Tener to reject Plaintiff's argument that the 4/1/2013 MOA constituted an agreement between Roseton and Local 320 that was currently applicable to the 2020-2025 CBA.

Accordingly, Arbitrator Tener did not exceed the scope of her authority with respect to Article XI.B by "ignor[ing] its binding effect on the parties. . . ." (Reply at 12). Nor did her finding "create[] a new obligation regarding the need to attach Supplemental Agreements to the CBA." (*Id*.). Arbitrator Tener interpreted the contractual provision and applied the pertinent portion based

on the evidence presented to her. That Plaintiff disagrees with her conclusion is not a basis to vacate the award.[7]

Finally, Plaintiff argues, and Defendant disputes, that Arbitrator Tener exceeded her authority by finding that calculating the remedy in this case requires input from an actuary. (Pl. Br. at 26; Def. Br. at 13). Here, Arbitrator Tener found that "[t]here is insufficient evidence in this record on which to make that calculation" and determined that "[t]he calculation requires input from an actuary." (56.1 ¶¶ 61-62). She directed the parties to confer on a remedy and retained jurisdiction in the event the parties could not agree on a remedy. (Pet. Ex. A at 9-10). Arbitrator Tener did not exceed the scope of her remedial authority when she required the parties to use an actuary to ascertain a more precise calculation of the mandated monetary remedy, even though use of an actuary was not referenced in the 2020-2025 CBA. *See Chelsea Grand, LLC v. New York Hotel & Motel Trades Council*, 729 F. App'x 33, 39 (2d Cir. 2018) (arbitrator did not exceed its scope of authority in requiring a remedy which was "not explicitly requested by the Union"); *c.f. Bragg v. Kalikow Fam. P'ship LP*, No. 19-CV-08801, 2020 WL 2086014, at *8 (S.D.N.Y. Apr. 30, 2020) (finding that an arbitrator's remedy failed to draw its essence from the collective bargaining agreement where he crafted his own remedy without even acknowledging the mandated remedy of reinstatement). Accordingly, the remedy determination is not grounds to vacate the award.

---

[7] Plaintiff also argues that Arbitrator Tener ignored Arbitrator Tillem's earlier finding that the 4/1/2013 MOA eligibility requirements applied. (Pl. Br. at 26; 56.1 ¶ 52). Even assuming *arguendo* that Arbitrator Tillem made that express finding, Plaintiff concedes that Arbitrator Tener was entitled to interpret the contract differently than Arbitrator Tillem. (Def. Br. at 12, n. 4; Reply at 12). Therefore, this is not a basis on which to vacate the award. In any event, the Court does not agree that Arbitrator Tillem's reference to the 4/1/2013 MOA in denying other grievants' retiree medical benefits is an express finding that is determinative of the eligibility requirements at issue here. (56.1 ¶¶ 52-54).

Defendant opposes the motion to vacate and, while Defendant does not cross-move to confirm the award, Defendant requests in its opposition memorandum of law that the Court confirm the award. (Def. Br. at 13). Plaintiff argues that Defendant cannot seek to confirm the award as a matter of procedure. (Reply at 14). A motion to confirm and a motion to vacate an arbitration award "submit identical issues for judicial determination." *Sanluis Devs., L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008). "[W]hen a court denies a motion to vacate an arbitration award, the court's judgment has the effect of collateral estoppel; the parties cannot relitigate the validity of the award." *Id*. Courts therefore "treat a party's opposition to a motion to vacate as a request to confirm the award." *Id*. Accordingly, while Defendant's request to confirm the award is procedurally defective in that it failed to obtain permission of the Court and file a Notice of Motion, the Court nevertheless construes Defendant's opposition as a motion to confirm the award in the interest of judicial economy. *See i.e. Katz v. Cellco P'ship*, No. 12-CV-09193, 2018 WL 1891145, at *3 (S.D.N.Y. Apr. 17, 2018), *aff'd*, 756 F. App'x 103 (2d Cir. 2019) (construing opposition to motion to partially vacate as a motion to confirm the arbitration awards).

Moreover, because Plaintiff has not provided any grounds to vacate the award, the award is confirmed. *See First Cap. Real Est. Invs., L.L.C. v. SDDCO Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 196 (S.D.N.Y.), *aff'd sub nom.*, 794 F. App'x 86 (2d Cir. 2019); *see also L'Objet, LLC v. Ltd.*, No. 11-CV-03856, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011) ("Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter.").

13

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to vacate the award is DENIED. Defendant's motion to confirm the award is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 27 and close this case.

**SO ORDERED.**

Dated: White Plains, New York
       May 29, 2024

PHILIP M. HALPERN
United States District Judge